IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT J. LEE, | ) | CASE NO. 1:04 CV 2169 |
| | ) | |
| Petitioner, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| JULIUS WILSON, Warden, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Respondent. | ) | **& ORDER** |

## I.  Introduction

Before the Magistrate Judge by consent[1] is the petition of Robert J. Lee for a writ of habeas corpus.[2]  Lee is living in Parma, Ohio, under a three-year period of supervised release,[3] having served a five-year sentence imposed after his conviction on charges of domestic violence, felonious assault and retaliation.[4]  Lee's supervised release status constitutes a restraint on his liberty sufficient to meet the "in custody" requirement for purposes of federal habeas jurisdiction.[5]

---

[1] ECF # 29.

[2] ECF # 1.  Lee originally filed his petition *pro se*, but is now represented by the Federal Public Defender's Office. ECF # 18.

[3] ECF # 16.

[4] ECF # 1 at 1.

[5] *Spencer v. Kemna*, 523 U.S. 1, 13-14 (1998).

In this petition, Lee raises three grounds for habeas relief:  (1) that the trial court erred in denying his motion for acquittal;[6] (2) that he was convicted against the manifest weight of the evidence;[7] and (3) that his appellate attorney was ineffective for multiple reasons.[8] The State responds by contending that ground one is procedurally defaulted,[9] ground two is not cognizable in this proceeding,[10] and ground three has no merit.[11]

For the reasons that follow, the Court grants Lee a conditional writ to permit him to challenge by direct appeal to the Ohio Supreme Court the state court rulings at issue in current habeas grounds one and two.  The Court finds that ineffective assistance of appellate counsel caused his delay in previously pursuing that appeal.

The Court further denies Lee's petition as to the remaining claims in ground three. Here, regardless of whether res judicata might have barred consideration of these claims by the state appellate court, that court's alternative holding denying the claims on the merits was not contrary to or an unreasonable application of clearly established federal law.

---

[6] ECF # 1 at 4.

[7] *Id.*

[8] *Id.* at 5.

[9] ECF # 13 at 11.

[10] *Id.* at 13.

[11] *Id.* at 15.

## II.  Facts and Course of Proceedings

**A.      The underlying facts**

The Ohio appellate court made the following findings of fact[12] as to the offenses for

which Lee was convicted:

> On September 16, 2002, defendant was indicted for one count of
> domestic violence with a furthermore clause which alleged that defendant had
> previously been convicted of domestic violence, one count of felonious
> assault, and one count of retaliation.  He pled not guilty and the matter
> proceeded to a bench trial on December 16, 2002.
>
> The complainant, "Beth," testified that she had been the defendant's
> girlfriend for five years.  Defendant had been living with his employer and was
> forbidden from drinking there, and she lived in her car.  On weekends, she and
> defendant stayed at the King's Inn in Strongsville so that they could be
> together and drink.  On July 20, 2002, she and defendant drank and went to the
> pool.  Later, they watched television and, according to Beth, defendant began
> to blame her for reporting a previous domestic violence incident for which
> defendant had been incarcerated.  He threw her on the bed, and using both
> hands, slammed the sides of her head, above her ears. He then straddled her
> and pressed his hands over her nose and mouth and repeatedly asked her if she
> wanted to die.  The woman testified that she could not breathe, started to see
> a white haze and felt as though she was about to pass out.
>
> The woman stated that she was afraid to report the matter after it
> happened.  The defendant apologized to her approximately a half hour later
> and begged her not to go to the police.
>
> The woman testified that she suffered headaches, ringing in her ears and
> impaired vision following the incident.  A week later, she went to Southwest
> General Hospital for treatment and reported the matter.  She was subsequently
> referred to an alcoholism treatment center.  At the time of the trial, the woman
> resided in an inpatient alcoholic treatment facility and was also getting

---

[12] Facts found by the state appeals court on its review of the trial record are entitled to the statutory presumption of correctness accorded to state court findings of fact in federal habeas proceedings.  28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

counseling through the Cuyahoga County Department of Children and Family Services.

The woman admitted that sometime between July 20, 2002, and the time when she sought treatment at Southwest General, she had been involved in a motor vehicle accident in which her vehicle struck the guardrail on the interstate. She denied getting hurt at that time, however. She acknowledged that she went to the defendant's place of employment after the accident to show him the damage then refused to leave, prompting the defendant's employer to file a police report.

The woman next established that after he was jailed in connection with this matter, defendant wrote her a number of times. In pertinent part, defendant wrote:

"When I do write [to my attorney] and my judge, I'm going with the hit your nose/steering wheel – accident. The excessive drinking, pill taking, depression, living out of your car and co-dependency, makes you live in fear and anxiety. You can use that. Both times you called police, Cleveland and Strongsville, you were afraid I was leaving you. *** Stick to this. *** Dude here told me [that if] it gets to trial, ladies from the women's shelter are going to pester you. That's why I suggested the perjury route *** Just ideas honey."

On cross-examination, the woman admitted that she had written a number of letters to the defendant in which she mentions perjury and lying. She also admitted that she had been drinking heavily at the time she went to Southwest General for treatment, and that she had experienced blackouts in the past.

The parties stipulated that in April 2002, defendant pled guilty to one count of domestic violence and was sentenced to seven months incarceration. It is undisputed that Beth was the victim of this assault.

The state also admitted the woman's medical records from July 27, 2002, which indicate that she reported to hospital personnel that her boyfriend slapped both cheeks approximately one week earlier, and that she complained of pain on the left side of her cheek which was getting worse. A CAT scan conducted at this time revealed a fracture of the nasal bone.

-4-

The defendant presented the testimony of his employer, Donald Downs, Jr. Downs testified that defendant began working for him in his flooring insulation business in 2001. Defendant was subsequently incarcerated for seven months but returned to work after this time. In July 2002, defendant began to live at Downs's home. Downs did not allow defendant to drink alcohol. In addition, Beth was not welcome to visit defendant there because, Downs stated, she had caused a disturbance in the parking lot of his place of business. Downs also testified that Beth had called his cell phone to reach the defendant and threatened that if defendant did not call her back, she would be "reporting him for something."

Defendant was subsequently convicted of all three charges. The trial court determined that a prison term was consistent with the purpose of R.C. 2929.11 and sentenced him to concurrent terms of twelve months incarceration for the domestic violence conviction, three years for the felonious assault conviction, and one year for the retaliation conviction.[13]

**B.    The trial**

Prior to trial, Lee's appointed counsel moved to dismiss the retaliation charge.[14] The court denied the motion.[15] Following that ruling, Lee waived his right to a jury,[16] and the case proceeded as a bench trial. At the conclusion of the State's case, Lee moved for an acquittal pursuant to Ohio Criminal Rule 29.[17] That motion was denied.[18] The trial judge

---

[13] ECF #15 at 33-36.

[14] *Id.* at 2.

[15] *Id.* at 202-03.

[16] *Id.* at 4.

[17] *Id*. at 287.

[18] *Id.* at 294.

found Lee guilty of all three counts and sentenced him as described in the decision of the appeals court.[19]

## C.    Direct appeal

Now represented by different counsel,[20] Lee timely appealed his conviction raising two assignments of error:

1.    The trial court erred in denying [Lee's] motion for acquittal with regards to felonious assault and the conviction for domestic violence [because the conviction on both charges] is based upon insufficient evidence.

2.    The trial court's finding of guilty for domestic violence and felonious assault is against the manifest weight of the evidence.[21]

Following a reply by the State,[22] the appellate court rejected Lee's assignments of error and affirmed the conviction.[23]

Lee did not timely appeal this decision to the Ohio Supreme Court. Instead, Lee, *pro se*, filed a motion for a delayed appeal. He represented that he had not timely appealed because he had not received a copy of the appellate decision from his appellate counsel until

---

[19] *Id.* at 5, 50.

[20] *Id.* at 6.

[21] *Id.* at 7.

[22] *Id.* at 24-31.

[23] *Id.* at 32-43.

it was already a month old, leaving him insufficient time to prepare a timely appeal to the Ohio Supreme Court.[24]  The Supreme Court denied the motion.[25]

**D.      The motion to reopen direct appeal**

Before he learned of the decision of the Ohio Supreme Court, Lee, *pro se*, timely sought to reopen his appeal in the state appeals court, alleging multiple instances of ineffective assistance of appellate counsel.[26]  The State opposed Lee's motion.[27]  The Ohio appeals court in a full opinion denied it.[28]

As its primary holding, the court found that because the issues presented in Lee's application to reopen were raised or could have been raised on direct appeal, "res judicata barred re-litigation of these matters."[29]  Alternatively, the court also held that, notwithstanding the bar of res judicata, Lee had not established that his appellate counsel was ineffective under the test established by *Strickland v. Washington*.[30]

---

[24] *Id*. at 44-45.

[25] *Id.* at 56.

[26] *Id.* at 101-14.

[27] *Id.* at 125-30.

[28] *Id.* at 179-89.

[29] *Id.* at 181.

[30] *Id.*

Lee then timely appealed that denial to the Ohio Supreme Court, asserting thirteen propositions of law.[31] The State filed a waiver of memorandum response.[32] The Ohio Supreme Court dismissed the appeal for want of a substantial constitutional question.[33]

### E.    Federal habeas petition

Lee, *pro se*, filed a timely petition for federal habeas relief setting forth the following three grounds for relief:

> Ground one – Conviction obtained by trial court error in denying the Petitioner's motion for acquittal with regards to felonious assault and domestic violence conviction.

> Ground two – Conviction obtained by trial court's finding of guilty for felonious assault is against the manifest weight of the evidence.

> Ground three – Ineffective assistance of appellate counsel.

> •    Claim one:  Petitioner's appellate counsel failed to provide him with a copy of the brief in direct appeal until 90 days after the journalization and who also did not address questions raised by Petitioner in own *pro se* brief. The failure of appellate counsel caused failure of the appellate court to address Petitioner's points on direct appeal, thus raising the presumption that counsel's assistance was ineffective.

> •    Claim two:  Appellate counsel was constitutionally ineffective by not raising ineffective assistance of trial counsel on direct appeal.

> •    Claim three: Appellate counsel failed to raise trial counsel's failure of not requesting that a pre-sentence report be made.

---

[31] *Id.* at 161-78.

[32] *Id.* at 190.

[33] *Id.* at 191.

- Claim four:  Appellate counsel failed to raise issue of the prosecution was allowed to enter evidence of past misdemeanor charge that was irrelevant.

- Claim five:  Trial counsel provided ineffective assistance by failing to protect defendant from multiple punishments for a single crime.

- Claim six:  Trial counsel provided ineffective assistance by not preparing a sound trial defense.

- Claim seven:  Trial counsel provided ineffective assistance by failing to request an instruction on lesser included offenses.

- Claim eight:  Trial counsel provided ineffective assistance by failing to ask victim on cross-examination victim's motive in testifying.

- Claim nine:  Trial counsel provided ineffective assistance by failure to ask victim on cross-examination to examine evidence that the prosecution presented at trial commencement to show guilt of defendant and by failure to move for motion (sic) to suppress.

- Claim ten:  Misconduct by prosecutor, as the evidence previously discussed in GROUND NINE was seized illegally.

- Claim eleven:  Prosecution coerced victim into testifying.

- Claim twelve:  Trial counsel provided ineffective counsel by failing to aggressively pursue contradictions in victim's testimony and often elicited responses that were helpful to the State.

- Claim thirteen:  Petitioner has repeatedly been denied Due Process and Equal Protection Clauses (sic) as stated in the U.S. Constitution, in denial of transcripts at State's expense to perfect appeal.[34]

---

[34] ECF # 1 at 4-5(G).

# III.   Analysis

## A.      Overview

This case presents a complex interrelationship between grounds for relief that must first be unraveled before each can be properly restated, analyzed, and resolved.

First, current grounds one and two of this petition are essentially restatements of the propositions of law asserted in Lee's original appeal to the Ohio Supreme Court.  The Supreme Court rejected that appeal as untimely. Ground three, claim one of this habeas petition – ineffective assistance of appellate counsel in providing Lee the results of his state appeal on an untimely basis – is properly understood as Lee's reason why he did not timely appeal to the Ohio Supreme Court.

Thus, finding merit in ground three, claim one here – the ineffectiveness of appellate counsel – would require a remedy permitting Lee to reassert current grounds one and two before the Ohio Supreme Court.  Cause and prejudice would exist to excuse the procedural default of untimeliness.

As to the balance of the ineffective assistance of appellate counsel claims under ground three, the state appellate court ruled on Lee's Rule 26(B) that res judicata barred those claims and, alternatively, addressed and rejected them on the merits.  For reasons explained below, this Court will review the alternative state court decision denying Lee's various claims of ineffective assistance of counsel on the merits and determine whether this alternative holding constitutes an unreasonable application of clearly established federal law.

Accordingly, given the interrelationship of the grounds for relief asserted here, this decision will initially consider whether grounds for relief one and two have been procedurally defaulted and, if so, then consider if that default should be excused because of cause and prejudice because of the ineffective assistance of appellate counsel alleged in ground three, claim one.  The Court will then decide if the state court reasonably applied clearly established federal law in rejecting on the merits the balance of the claims under ground three.

**B.     Grounds one and two – that the state trial court erred in denying his motion for acquittal due to insufficient evidence and that his conviction was against the manifest weight of the evidence – the defense of procedural default**

*1.     Procedural default – the applicable standard*

The Sixth Circuit recently re-stated the analytical framework for considering procedural default in the context of a habeas petition:

> A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his habeas claims by a federal court.  The petitioner must first exhaust the remedies available in state courts by fairly presenting his federal claims to the state courts; unexhausted claims will not be reviewed by the federal court.  The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  The federal court will not review claims that were not entertained by the state court either due to the petitioner's failure to raise those claims in the state court while state remedies were available *or* when the petitioner's failure to comply with a state procedural rule prevented the state court from reaching the merits of the claim.

> For noncompliance with a state procedure to serve as a bar to habeas review, the state procedure must satisfy the standards set forth in *Maupin v. Smith*.  First, there must be a state procedure in place that the petitioner failed to follow. Second, the state court must have actually denied the petitioner's claim on the ground of the state procedural default.  Third, the state procedural

rule must be an "adequate and independent state ground" to preclude habeas review. This inquiry "generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." A state procedural rule must be "firmly established and regularly followed" to constitute an adequate basis for foreclosing habeas review. A state procedural rule is an independent ground when it does not rely on federal law. If these three factors are satisfied, the petitioner can overcome the procedural default by "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."[35]

To establish "cause" for a procedural default, a habeas petitioner must show that "something *external* to the petitioner, something that cannot fairly be attributable to him[,]" precluded him from complying with the state procedural rule.[36] Establishing "prejudice" requires that any alleged constitutional error be shown to have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[37] A "fundamental miscarriage of justice" is understood to require proof of "actual innocence."[38]

Ineffective assistance of counsel may provide cause to excuse procedural default, but only if that claim is itself first fairly presented to and exhausted in the state courts.[39] However, a failure to exhaust state remedies on an ineffective assistance of counsel excuse

---

[35] *Smith v. Ohio Dep't of Rehab. and Corrs.*, 463 F.3d 426, 430-31, (6th Cir. 2006) (emphasis in original, internal citations omitted).

[36] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original).

[37] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[38] *Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir. 2003).

[39] *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

for a procedural default may also itself be excused from procedural default if a federal habeas petitioner can establish cause and prejudice concerning that claim.[40] But a claim of ineffective assistance of counsel will not serve to excuse procedural default occurring during state post-conviction proceedings because there is no right to counsel in such proceedings.[41]

### 2.      *Analysis of the procedural default defense*

Here, the evidence is plain and uncontested that Lee did not timely file his motion for leave to appeal with the Ohio Supreme Court. Further, the Ohio Supreme Court unequivocally held that this untimeliness barred the direct appeal.  This failure to perfect a timely appeal to the Ohio Supreme Court under the deadline imposed by Rule II § 2(A)(4), as the State asserts,[42] constitutes an adequate and independent state law basis for now foreclosing federal habeas review.[43]

### 3.      *Cause and prejudice as excusing procedural default.*

However, despite the procedural default, Lee has shown cause for this untimeliness before the Ohio Supreme Court by establishing that his late receipt of the state appellate court judgment was caused by the ineffective assistance of his appellate attorney.[44] He has also established prejudice from that delay, since, but for his appellate attorney's untimeliness in

---

[40] *Id.*

[41] *Coleman*, 501 U.S. at 752.

[42] ECF # 13 at 13.

[43] *Coleman*, 501 U.S. at 740; *Smith*, 463 F.3d at 432; *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

[44] ECF # 1 at 4.

transmitting the results of his appeal, Lee would have timely appealed to the Ohio Supreme Court.

This case is remarkably like the situation recently faced by the Sixth Circuit in *Smith v. Ohio Department of Rehabilitation and Corrections.*.[45]  There, the petitioner also alleged that his state appellate counsel failed to timely notify him of the results of that appeal, providing those results just three days before an appeal needed to be filed in the Ohio Supreme Court.[46]

The Sixth Circuit initially found, upon a review of United States Supreme Court teaching, that the duties of counsel during the first appeal as of right do not end until the results of that appeal have been communicated to the client and the client consulted about a further appeal.[47]  It then concluded that counsel's action in informing the petitioner of "the decision of the Ohio Court of Appeals affirming his conviction within days of the deadline for filing of the appeal cannot be deemed 'objectively reasonable,' and thus constitutes constitutionally deficient performance."[48]

The *Smith* court did not find that the ineffective assistance in that case prejudiced the petitioner.  However, the Sixth Circuit in *Smith* noted that prejudice from ineffective assistance of appellate counsel will be presumed where "'there is a reasonable probability

---

[45] *Smith*, 463 F.3d 426.

[46] *Id.* at 434.

[47] *Id*. at 433-34.

[48] *Id.* at 435.

-14-

that, but for counsel's deficient failure to' notify [petitioner] of the Ohio Court of Appeals decision, [petitioner] 'would have timely appealed' to the Ohio Supreme Court."[49] Because the petitioner in *Smith* took no action to file an appeal with the Ohio Supreme Court for approximately five months after he received notice of the Ohio appellate decision,[50] the Sixth Circuit concluded that he was not prejudiced by his counsel's ineffectiveness.[51]

Here, as evidenced by uncontested facts, Lee's direct appeal was decided on November 3, 2003.  He did not receive notice of that result until December 2, 2003.  The deadline for appealing to the Ohio Supreme Court was December 18, 2003.  Lee attempted to file a delayed appeal with the Ohio Supreme Court on December 26, 2003, or approximately three weeks after he received notice of the results of his appeal.

Guided by the Sixth Circuit's holding in *Smith*, the Court concludes that, given the 45-day deadline for appeals to the Ohio Supreme Court, the performance of Lee's appellate counsel in waiting nearly a month to inform Lee of the result of his state appeal was objectively unreasonable, thus constituting constitutionally deficient assistance of counsel. Therefore, Lee has established cause for his procedural default.

Moreover, unlike the situation in *Smith*, the Court also concludes that Lee was prejudiced by this ineffectiveness.  Here, the evidence is clear that, but for counsel's failure to provide timely notice of the state appellate decision, Lee would have timely appealed that

---

[49] *Id.*, quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 485 (2000).

[50] *Id.* at 436.

[51] *Id.*

decision to the Ohio Supreme Court.  He filed his delayed appeal 24 days after receiving

notice of the results of his appeal.

The Sixth Circuit in *Smith* held that prejudice from delayed notice of a state appellate

court decision will be rebuttably presumed if the petitioner can show that the period of time

between when the petitioner learned of the decision and when he attempted to appeal does

not exceed the time provided by state law for the timely filing of the appeal.[52]  The appeal

time from the Ohio appellate court to the Supreme Court is 45 days.[53]  Lee's motion for

delayed appeal filed 24 days after receipt of notice of the appellate court decision gives rise

to the *Smith* presumption.  The State has not rebutted that presumption.

Where ineffective assistance of counsel has prejudiced a petitioner by depriving him

of his appeal, the remedy is a conditional writ unless the state court allows the petitioner to

proceed with the appeal.[54]  The habeas court will not review the merits of the issues that the

petitioner may have asserted in the state appeal if satisfied that but for counsel's deficient

conduct, the petitioner would have timely appealed.[55]

Lee has overcome the procedural default arising from his untimely filing of his motion

for leave to appeal with the Ohio Supreme Court by establishing that deficient performance

of counsel caused that untimeliness and prejudice from the deficient performance.

_____

[52] *Id.* at 435.

[53] Ohio Supreme Court Rule II § 2(A)(1)(a).

[54] *Flores-Ortega*, 528 U.S. at 484-86.

[55] *Id.* at 486.

**C.      Ground three – ineffective assistance of appellate counsel**

*1.      The procedural default defense*

Since "[a] state's procedural rules are of vital importance to the orderly administration of the criminal courts," when a federal habeas court "permits them to be readily evaded, it undermines the criminal justice system."[56]  However, this consideration does not "mean to suggest that the procedural-bar issue must invariably be resolved first [in a federal habeas case]; only that it ordinarily should be."[57]  As the Supreme Court noted, judicial economy may dictate that the habeas court overlook the procedural default and reach the merits if the issue on the merits was "easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."[58]

Similarly, in applying this rule, the Sixth Circuit teaches that a procedural default may be overlooked when its resolution is unnecessary to the disposition of the habeas petition.[59]

Here, as it concerns the claims raised in the Rule 26(B) application, the procedural default involves a complicated issue of state law and is also unnecessary to the resolution of this petition given the alternative holding of the state appeals court.

Initially, the default here rests on res judicata, or the finding that the issues Lee first raised in his Rule 26(B) application could have been asserted earlier in Lee's direct appeal

---

[56] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[57] *Id*.

[58] *Id.*

[59] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

-17-

to the Ohio Supreme Court.  However, the operation of res judicata in this instance is complicated when the reason for the Ohio Supreme Court's denial of Lee's original appeal – its untimeliness – is now set aside.

In such a circumstance, Lee, as a remedy, would receive the right to have that original appeal heard.  But, in addition, this Court would also need to decide if Lee would receive only the right to reassert the same grounds as raised in his motion for delayed appeal or would be permitted to amend it to include those grounds the Rule 26(B) court, in finding res judicata, concluded should have been presented to the Ohio Supreme Court in that original appeal.  Whether Lee should receive a broader appeal would, in turn, require consideration of the significance of the Supreme Court's dismissal of the appeal from the Rule 26(B) decision, which decision was based in the first instance on res judicata now discredited.

In addition to this complexity, relying on procedural default here is unnecessary.  The state appeals court, in its alternative holding, resolved the claims presented to it in Lee's Rule 26(B) application on their merits against Lee.  As discussed below, the balance of Lee's ground three can be decided on the merits under the reasonable application of clearly established federal law standard.

Accordingly, based on the rule articulated by the Supreme Court in *Lambrix v. Singletary*,[60] as restated by the Sixth Circuit in *Hudson v. Jones*,[61] the Court will overlook the

---

[60] *Lambrix*, 520 U.S. at 525.

[61] *Hudson*, 351 F.2d at 215-16.

-18-

procedural default of res judicata concerning the claims first asserted in Lee's Rule 26(B) application and consider those claims pursuant to the state appeals court's alternative holdings on the merits.

**2.      *The merits of the ineffective assistance of appellate counsel claim***

*a.      Habeas corpus standard of review*

In relevant part the fundamental statute governing this petition states that the writ shall not be granted with respect to any claim that was adjudicated on the merits by a state court, unless that decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.[62]

The two standards posited by this rubric are not identical.[63]  As promulgated by the Supreme Court in *Williams v. Taylor*,[64] a state court decision is "contrary to" clearly established federal law when it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or where "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite of [the Supreme Court]."[65]  A state adjudication is an "unreasonable application of" clearly established federal law where it "identifies the correct governing legal rule

---

[62] 28 U.S.C. § 2254(d).

[63] *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

[64] *Williams v. Taylor*, 529 U.S. 362 (2000).

[65] *Id*. at 405.

from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[66]

As to the "unreasonable application" test, a merely erroneous or incorrect state court decision is not "unreasonable."[67]  Rather, the application of clearly established federal law made by the state tribunal must be "objectively unreasonable."[68] A federal habeas court's "independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly" is not sufficient grounds for granting the writ.

b.      *The clearly established federal law on ineffective assistance of counsel*

To establish ineffective assistance of counsel, a habeas petitioner must show that (1) his counsel's performance was constitutionally defective and (2) that this deficient performance prejudiced his defense so as to render the trial unfair and the result unreliable.[69]

In addressing the first prong of this standard, a habeas court must recognize "that counsel is presumed to have rendered adequate service and made all significant decisions in the exercise of reasonable professional judgment."[70]  In this regard, the reviewing court must independently determine "not whether counsel's choices were strategic, but whether they

---

[66] *Id.* at 413.

[67] *Id.* at 409.

[68] *Id.*

[69] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[70] *Id.* at 690.

were reasonable."[71]  As *Strickland* emphasized, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations."[72]

With respect to the second aspect of the *Strickland* inquiry, whether deficient performance prejudiced the petitioner's defense, the habeas court must determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[73] This requires more than showing that "the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test."[74] Rather, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[75]

---

[71] *Roe*, 528 U.S. at 481.

[72] *Strickland*, 466 U.S. at 690.

[73] *Id.* at 694.

[74] *Williams*, 529 U.S. at 394 (citing *Strickland*, 466 U.S. at 693).

[75] *Strickland*, 466 U.S. at 686.  *See also*, *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).

Both prongs of this test must be met to merit relief,[76] but courts need not analyze both if the claim can be denied upon petitioner's failure to meet one aspect of the standard.[77]

Claims of ineffective assistance of appellate counsel are subject to a comparable test.[78] Specifically, the Supreme Court has recognized that effective appellate advocacy involves "winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most on a few key issues."[79] A litigant on appeal does not have a right to require his appellate counsel to make every non-frivolous argument possible, "if counsel decides as a matter of professional judgment not to press those points."[80]  The test for ineffectiveness here, as with trial counsel, is whether, but for the purported error, there is a reasonable probability that the result of the appeal would have been different.[81]

---

[76] *Strickland*, 466 U.S. at 697

[77] *See*, *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004).

[78] *Smith v. Jago*, 888 F.2d 399, 405 n.1 (6th Cir. 1989).

[79] *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[80] *Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985) (citing *Jones*).

[81] *Id.* at 194, citing *Strickland.*

c.      *The framework for consideration of Lee's various claims of ineffective assistance of appellate counsel*

Lee maintained in his Rule 26(B) application that his appellate counsel was ineffective for multiple reasons.[82]  He has restated these claims, though not in identical form, in this petition for habeas relief.[83]

The Court has previously determined that one of those reasons – counsel's failure to timely transmit the result of the direct appeal – was more properly considered in the context of this petition as grounds to excuse the procedural default created by the untimely filing of the leave to appeal with the Ohio Supreme Court and not as an independent ground for relief. Thus, that claim has been addressed.

Many of the claims asserted as part of Lee's third ground for relief are couched in terms of ineffective assistance of trial counsel or prosecutorial misconduct.  Ohio Rule 26(B) exclusively involves claims of ineffective assistance of counsel against the appellate counsel. However, appellate counsel cannot be ineffective in raising an issue that itself has no merit. So, the state court here resolved those claims as ones alleged ineffectiveness in appellate counsel for failure to raise ineffectiveness of trial counsel or prosecutorial misconduct.  It reviewed the underlying claims to determine if the record supported an argument that appellate counsel improperly failed to raise.  This Court will follow the state appellate court's approach.

---

[82] ECF # 15 at 102-10.

[83] ECF # 1 at 5A-5G.

Accordingly, the remaining claims will now be considered in sequence.

d.     *Claim one – failure of appellate counsel to transmit the results of the appeal within 90 days*

As noted, this claim has been analyzed and decided not as a stand-alone claim for relief but as presenting grounds to excuse the procedural default created by operation of the time limit on appeals to the Ohio Supreme Court.

e.     *Claim two – Trial counsel was deficient in not permitting Lee to testify on his own behalf.*

This issue was the subject of additional briefing ordered by the Court.[84]  Essentially, Lee contends that he was blocked from testifying on his own behalf by his trial counsel.[85] He then maintains that, contrary to the decision of the state appeals court, his appellate counsel could and should have raised this issue without resorting to matters outside of the record.[86]  He asserts that the absence of any indication of a waiver of this right in the record "was all appellate counsel would have needed to make the argument."[87]

In response, the State argues that without any action by Lee sufficient to alert the trial court of his desire to testify, there was no need to conduct an on-the-record inquiry of Lee.[88]

---

[84] ECF # 18.

[85] ECF # 1 at 5A.

[86] ECF # 22 at 4-5.

[87] *Id*.

[88] ECF # 24 at 2-3.

Thus his silence in the record is enough to presume his waiver of his right to testify and negate any colorable assignment of error on appeal.[89]

The state court here, as noted, decided this claim by positing that an appellate counsel could not argue ineffective assistance of trial counsel for thwarting Lee's trial testimony without resorting to matters beyond the trial record and such argument would not have been "appropriate" on appeal.[90] It, therefore, concluded that appellate counsel was not constitutionally ineffective for refusing to raise that assignment.[91]

This Court has already noted the right of a defendant to testify on his own behalf.[92] The issue here is whether the record supports an assignment that trial counsel's conduct deprived Lee of that right.

Specifically, as the State observes, the rule as formulated by the Sixth Circuit in *United States v. Webber*[93] is:

> Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant has knowingly and intelligently waived the right to testify, nor ensure that the defendant has waived the right on the record.[94]

---

[89] *Id.*

[90] ECF # 15 at 184.

[91] *Id.*

[92] *See*, ECF # 18 at 3, n.16.

[93] *United States v. Webber*, 208 F.3d 545 (6th Cir. 2000).

[94] *Id.* at 551.

As is directly applicable here, *Webber* goes on to note that:

> When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct.  Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.[95]

The State correctly observes that Lee did not notify the trial court of any desire to testify by either words or actions.  Under those circumstances, a waiver is properly presumed.  The trial court had no duty to inquire about a waiver and made no inquiry.  Thus, the State asserts, there can be no ineffectiveness of appellate counsel in not advancing the argument.[96]

The Court agrees.  Lee attempts to create an issue by blaming trial counsel for "rest[ing] the defense without consulting petitioner."[97]  However, as *Webber* makes clear, the responsibility for protecting the right to testify rests ultimately with the defendant, not trial counsel.  While the trial court is obligated to prevent counsel from impeding the exercise of that right, it will not be required to conduct an inquiry until the defendant does or says something to make the court aware that a defendant wishes to exercise it.

---

[95] *Id.*

[96] ECF # 24 at 3.

[97] ECF # 1 at 5A.

f.     *Claim three – Trial counsel was deficient in not obtaining a presentence report.*

The state court noted here that under state rules, failure to request a pre-sentence report at trial will not create grounds for appeal "except under the most exigent of circumstances."[98]  The state court found that Lee had not demonstrated the existence of such exigent circumstances that would have made an appeal meritorious.[99]

This Court likewise notes that Lee, in his short three sentence exposition of this claim in his petition, also does not attempt to show that such exigent circumstances existed in his case so as to justify appealing trial counsel's failure to request a report.[100]  Moreover, as the State points out, Lee received concurrent sentences that were less than the maximum on each count.[101]  Thus, it is doubtful that a favorable presentence report would have had any effect on the ultimate sentence.[102]

The Court, therefore, concludes that, since Lee has not shown that there was a meritorious issue here for appeal, the decision of the state court denying this ineffective assistance of appellate counsel claim is not an unreasonable application of clearly established federal law.

---

[98] ECF # 15 at 188, quoting *State v. Adams*, 37 Ohio St. 3d 295, 297, 525 N.E.2d 1361, 1363 (1988).

[99] *Id.*

[100] *See*, ECF # 1 at 5A.

[101] ECF # 13 at 19.

[102] *Id.*

g.     *Claim four – Trial counsel failed to object to the introduction of evidence of a past misdemeanor conviction for falsification.*

The State asserts that Lee is mistaken on the facts.[103]  No evidence as to any charge of falsification was introduced at trial, it maintains, but evidence of a prior conviction for domestic violence was introduced.[104]   As the State further explains, proof of a prior conviction for *misdemeanor* domestic violence is an essential element of the offense of *felony* domestic violence.  Consequently, it would have been unavailing for trial counsel to have objected to the State's introduction of proof of a necessary element to a charged offense and equally unavailing for appellate counsel to have raised this issue on appeal.[105]

The state appeals court, however, does indicate that the victim disclosed in her testimony that Lee had previously pled guilty to falsification.[106]  The state court concluded that appellate review of that testimony would only be available on grounds of "plain error" because Lee's trial counsel did not object.[107]   Since sustaining an appeal on plain error requires a finding that, but for the error, the outcome of the trial would have been different and since, in this instance, there was no evidence that such would be the case, the state appeal court found that there was no basis for requiring appellate counsel to make this argument.[108]

---

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] ECF # 15 at 187.

[107] *Id.*

[108] *Id.* at 187-88.

As with previous claims, this Court finds that Lee has not shown why the state court decision here was an unreasonable application of clearly established federal law.  While he argues that prejudice from admitting evidence of his past plea outweighs any probative value of the evidence,[109] Lee does not contest the state court's finding that only "plain error" was available for making an argument of this issue on appeal.  Further, Lee does not dispute the court's conclusion that there was no proof that, but for the use of this evidence, the result at trial would have been different.

Once again, under the federal habeas standard, the state court's decision that appellate counsel was not ineffective must stand.

h.      *Claim five – Trial counsel was ineffective for not protecting Lee from multiple punishments for the same offense.*

Once again, the State contends that Lee is mistaken as to the factual predicate of this claim.[110]  Specifically, it maintains that Lee's trial counsel did attempt to merge the counts of domestic violence and felonious assault.[111]  The prosecutor at trial told the trial court that any merger would be "a moot point" since the State was not asking for sentences to run consecutively.[112]  In fact, the sentences for domestic violence and felonious assault, as noted, were imposed concurrently.

---

[109] ECF # 1 at 5A.

[110] ECF # 13 at 19.

[111] *Id.*, citing ECF # 15 (trial transcript) at 336.

[112] *Id.* at 336-37.

Upon review, the Court finds that the State is correct as to the facts regarding an attempt to merge these offenses.  Lee's counsel did make such an attempt, which became moot when the trial court imposed concurrent sentences.[113]

As noted by the state court in its review of Lee's Rule 26(B) application, "a defendant suffers no prejudice when he is sentenced to concurrent sentences for allied offenses."[114] Thus, the state court concluded, even if Lee's trial counsel had erred by not requesting merger, there would have been no prejudice to Lee and so no assignment of error to assert on appeal.[115]

This Court concludes that the decision of the state appeals court on this claim was not an unreasonable application of clearly established federal law.

i.    *Claim six – Trial counsel was ineffective for not preparing a sound trial defense.*

Lee here attacks trial counsel's strategy of seeking a plea bargain.[116] He contends that a focus on a plea bargain meant that evidence of "many mitigating circumstances" were not introduced at trial.[117] Lee does not identify any of those circumstances he believes were mitigating but not asserted at trial.

---

[113] *See, id.* at 186.

[114] *Id.*

[115] *Id.*

[116] ECF # 1 at 5B.

[117] *Id.*

A broad challenge to trial strategy must overcome the presumption, articulated in *Strickland*, that counsel rendered competent assistance.  As the Supreme Court observed in *Strickland*, "actions of omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance."[118]  The state appeals court, after citing these controlling principles, rejected Lee's argument, saying that it "will not second-guess counsel's trial tactics or strategy."[119]

Lee has not clearly identified the mitigating circumstances he believes trial counsel ignored.  As the State noted in its return of the writ, Lee has made "conclusory allegations" of an ineffective trial strategy that do not take into account evidence of a strategy of impeaching the testimony of the victim and introducing corroborating evidence supportive of Lee's version of events.[120]  More importantly, as to the second prong of *Strickland,* he has failed to substantiate to a reasonable probability that evidence that his counsel failed to introduce at trial would have produced a different result.

Accordingly, the state court's decision that no colorable assignment existed as to mitigating evidence, and therefore, appellate counsel was not ineffective for failing to assert that assignment was not an unreasonable application of clearly established federal law.

---

[118] *Strickland*, 466 U.S. at 689.

[119] ECF # 15 at 183.

[120] ECF # 13 at 21.

j.    *Claim seven – Trial counsel failed to request an instruction as to lesser included offenses.*

Lee contends that his trial counsel was ineffective for not requesting an instruction on the lesser included offenses for felonious assault and domestic violence.[121]  The state appeals court found that, even assuming such a request is needed in a bench trial, failure to ask for that instruction "is a matter of trial strategy and does not deprive a defendant of effective assistance of counsel."[122]

The State here correctly notes that such a request would have been inconsistent with the defense's theory of the case.  The defense position was that the victim received her injuries in a non-related car accident and chose to blame them on Lee because she was angry with him.[123]

The physical injuries to the victim were sufficiently serious to support a conviction for felonious assault and domestic violence if caused by Lee, and so Lee's defense was that he did not cause those injuries.  Thus, the key issue at trial was the credibility of the victim and Lee.  Considering lesser included assault offenses would have been meaningless if the victim was found to have been injured in an accident and no help to Lee if it was determined that he, not an accident, caused those uncontestably serious injuries.[124]

---

[121] ECF # 1 at 5B.

[122] ECF # 15 at 186.

[123] ECF # 13 at 22.

[124] *Id.*

The state appellate court's decision that appellate counsel was not ineffective for failing to assert this assignment is not an unreasonable application of clearly established federal law.

k.      *Claim eight – Trial counsel was ineffective in cross-examination by not asking the victim about her motive in testifying.*

Lee maintains that counsel did not ask the victim about her motive for testifying, despite the fact that Lee had specifically directed counsel to ask that question.[125]  Lee relates that in refusing to ask this question, counsel told him that he was concerned about "badger[ing] the witness/victim."[126]

The state court initially noted that decisions about the scope of cross-examination are well-established as being a matter of trial strategy.[127]  As such, merely debatable trial strategies are not ineffective assistance of counsel.[128]

Here, as the state court opinion stated, a review of the cross-examination in the trial record disclosed that Lee's trial counsel "did inquire about the contradictions in the victim's testimony concerning her injuries and the time it took her to report those injuries."[129]  As such, the cross-examination went to the defense theory that the victim was injured in an accident and later decided to blame the injuries on Lee.

---

[125] ECF # 1 at 5B.

[126] *Id.*

[127] ECF # 15 at 184.

[128] *Id.* at 185.

[129] *Id.*

Further, as the State relates in its return of the writ, both the cross-examination and the direct, taken together, established that the victim was an alcoholic with post-traumatic stress disorder, which conditions caused her to have nightmares, flashbacks and hallucinations.[130]  Given this assault on her credibility, the State notes that "[n]othing more would have been gained by [also] attacking the victim's motivation for testifying."

In that regard, Lee yet again does not show how asking this one additional question on motivation, on top of the just-related challenges to the victim's credibility, could reasonably have been expected to alter the result of the trial.  As the state court said, "Lee has failed to demonstrate how he was prejudiced by counsel's cross-examination."[131]

Accordingly, the Court finds that the decision of the state court denying this claim for relief was not an unreasonable application of clearly established federal law.

l.      *Claim nine – Trial counsel was ineffective in failing to take a continuance to examine new evidence presented by the state at trial and for not moving to suppress that evidence.*

Lee contends that his trial counsel was ineffective because he did not take a continuance offered by the court to study letters Lee wrote to the victim.  The State had failed to provide these during discovery but proffered them the day before trial.[132]  Lee also

---

[130] ECF # 13 at 23.

[131] ECF # 15 at 185.

[132] ECF # 1 at 5C.

maintains that his trial counsel should have moved to suppress the introduction of those letters into evidence.[133]

The State counters that the one-day period that Lee's counsel had to examine these letters before trial was "more than ample time" to conduct his review.[134]  In addition, the State asserts that Lee has not shown how a continuance "would have had any effect on the defense."[135]

The state appeals court in denying this claim also noted that Lee "failed to show how the results of his trial would have been different if counsel did ask for a continuance."[136]

Lee argues that a continuance here would have allowed defense counsel, after examining the letters, time to "confer with defendant [as to] points of defense strategy."[137]

Plainly, if more time for preparation of a defense was always *per se* an absolute right and undeniable benefit, then simply declining more time would always *per se* be ineffective assistance of counsel.  However, the ultimate test is not whether counsel took all available time, but whether Lee could show a reasonable probability that the result of his trial would have been different if counsel did obtain a continuance in this situation.

---

[133] *Id.*  The claim of failure to move for suppression of the letters is discussed in Part III.C.2.m. below.

[134] ECF # 13 at 24.

[135] *Id.*

[136] ECF # 15 at 185.

[137] ECF # 1 at 5C.

The state court decision – based on Lee's failure to establish that reasonable probability of a different result – was accordingly not an unreasonable application of clearly established federal law.

m.    *Claim ten – Misconduct by the prosecutor by the alleged illegal seizure of the letters referred to in claim nine*

Lee maintains that his letters to the victim were first revealed to the prosecutor by the victim's treatment counselor.[138]  Lee argues that the counselor and the prosecutor improperly "threatened" and "pressured" her into giving up the letters.[139]

The Court notes that this argument was not presented to the state appeals court in Lee's Rule 26(B) application.[140]  He did assert it, though, to the Ohio Supreme Court in his appeal of the denial of that motion.[141]

Furthermore, Lee did present a second prosecutorial misconduct claim – that the prosecutor improperly coerced the victim into testifying – based on the same factual nexus. The Court, therefore, will consider the two prosecutorial misconduct claims together immediately below.

n.    *Claim eleven – The prosecutor coerced the victim into testifying.*

Lee maintains here, as he did earlier concerning the letters, that the prosecutor threatened to remove the victim from necessary treatment unless she gave up the letters Lee

---

[138] *Id.*

[139] *Id.* at 5C - 5D.

[140] ECF # 15 at 101-11.

[141] *Id.* at 172.

wrote her and agreed to testify against Lee.[142] He bases this claim, as well as the one alleging misappropriation of his letters, on correspondence he received from the victim after the trial alleging that she was coerced.[143]

The State correctly points out that the victim was asked directly on redirect examination if she had been coerced into testifying.[144] She responded that she had not been coerced.[145] Thus, the State concluded, if the victim testified under oath that she was not coerced, Lee's appellate counsel would have no basis for claiming to the contrary on appeal.

The state appeals court in denying this claim in the Rule 26(B) application employed similar logic. It reasoned that (1) since an appellate argument of coercion here would require use of matters outside the trial record to contradict the victim's testimony, *i.e.*, the letter to Lee from the victim sent after the trial was concluded; and (2) since use of materials outside the record on appeal is "inappropriate;" there can be no ineffectiveness on the part of Lee's appellate attorney for not pursuing what is unattainable.[146]

While the victim, after the trial, represented to Lee that she had been coerced, she explicitly testified under oath at trial that she voluntarily gave the prosecutor the letters she

---

[142] ECF # 1 at 5D.

[143] *Id.*

[144] ECF # 13 at 25.

[145] *Id.*, citing ECF # 15 at 280-81.

[146] ECF # 15 at 184. This reasoning also applies to Lee's claim that appellate counsel should have challenged trial counsel's failure to move to suppress the letters as unlawfully obtained.

received from Lee[147] and that she was not coerced into testifying.[148]  On such a record, this Court cannot conclude that the state court decision on this claim was an unreasonable application of clearly established federal law.

o.    *Claim twelve – Trial counsel was ineffective for not aggressively pursuing contradictions in the victim's testimony and for often eliciting answers helpful to the state.*

Lee contends that his trial attorney was constitutionally ineffective because he did not "aggressively pursue contradictions in [the] victim's testimony" and instead "often elicited responses that were helpful to the state."[149]

The State in its response observed that defense counsel conducted an extensive cross-examination of the victim, inquiring into her alcohol problem, her taking of anti-depressant medication, her extensive drinking on the night she alleged that Lee hit her, her suicidal tendencies, her possession of a knife on the night of the alleged assault, and her memory losses in the past.[150]  The State argues that this extensive cross-examination[151] into multiple areas with the objective of impeaching the victim's testimony was "more than adequate."[152]

------------

[147] *Id.* at 238.  "Prosecutor: How did you get the letter?  Victim: Robert mailed it to me.  Prosecutor: How did I get the letter?  Victim: I gave it to you."

[148] *Id.* at 281.  "Prosecutor: Did I make you come to court?  Victim: No.  Prosecutor: Did I threaten you if you didn't come to court?  Victim: No."

[149] ECF # 1 at 5E.

[150] ECF # 13 at 26.

[151] *See*, ECF # 15 at 256-80.

[152] ECF # 13 at 26.

The state appeals court based its denial of this claim on the wide discretion afforded to counsel on cross-examination and on Lee's failure to show how conducting the cross-examination any differently in the areas he mentions would reasonably have resulted in a different result.[153]  It, too, noted that its review of the cross-examination demonstrated that "counsel did inquire about the contradictions in the victim's testimony concerning her injuries and the time it took her to report those injuries."[154]

Once again, Lee may have had specific questions he would have asked that his counsel did not.  The Sixth Amendment does not mandate that counsel scrupulously read every word from a defendant's script of examination questions to be judged effective.  Here, as before in this case, the touchstone is whether Lee has shown he was prejudiced by counsel's deviation from his lines.

An extensive cross-examination was actually conducted by counsel and referenced by the state court.  Moreover, Lee has not established how the failure to ask his specific questions at trial resulted in a breakdown of the adversarial system that rendered the trial result unreliable.  Thus, this Court concludes that the decision of the state court on this claim was not an unreasonable application of clearly established federal law.

---

[153] ECF # 15 at 185.

[154] *Id.*

p.    *Claim thirteen – Lee was denied his right to have a trial transcript at state expense to permit him to prepare an appeal.*

Lee contends that he was denied a trial transcript in preparation for appeal.[155] Specifically, he states that he sought a transcript from the state court because his appellate counsel never answered his requests for a transcript.[156]

The State responds that since Lee was represented by counsel on appeal and counsel did have a transcript, there is no requirement that the defendant personally be given a copy.[157]

The assertion that Lee's appellate counsel was ineffective because Lee did not have a personal copy of the transcript on direct appeal has no merit.  His counsel did receive the transcript provided by the State of Ohio.[158]  As the State points out, Lee's counsel had the transcript, as evidenced by his citations to it in his appellate brief.[159]  Moreover, Lee's appellate counsel, who was in possession of the transcript, was under no duty to provide Lee with his own additional copy of the transcript during counsel's preparation of the appeal.[160]

As before, Lee never raised this argument to the appellate court in his Rule 26(B) application.  However, he did assert it to the Ohio Supreme Court in his appeal from

---

[155] ECF # 1 at 5(G).

[156] *Id.*

[157] ECF # 13 at 26-27.

[158] *See*, *Greene v. Brigano*, 123 F.3d 917, 921 (6th Cir. 1997).

[159] ECF # 13 at 27.

[160] *United States v. Ilodi*, 982 F. Supp. 1046, 1048-49 (D. Md. 1997).

the denial of the motion to re-open.[161]   Nevertheless, this procedural defect aside, the
conclusion that appellate counsel was not ineffective for failure to provide Lee with a copy
of the transcript during his appeal to the state appellate court is neither contrary to nor an
unreasonable application of clearly established federal law.

## IV.   Conclusion

Based on the foregoing analysis, Lee's petition is granted in part and denied in part.
A conditional writ of habeas corpus under 28 U.S.C. § 2254 will be granted.  On or before
October 1, 2007, counsel for Lee in this case must file in the Supreme Court of Ohio a
motion to reinstate Lee's delayed appeal, incorporating propositions of law corresponding
to grounds one and two of his habeas petition.  If Lee's appeal is not reinstated on or before
December 1, 2007, the conviction at issue will be vacated.[162]

IT IS SO ORDERED.


Dated:   August 31, 2007                               s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge

---

[161] ECF # 15 at 175-76.

[162] *See*, *Hayes v. Morgan*, 58 F. Supp. 2d 817, 821 (N.D. Ohio 1999).

-41-